UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:14-cv-00235-MOC

| | |
|---|---|
| **SYLVESTER JOHNSON,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| Vs. | ) MEMORANDUM OF DECISION |
| | ) and ORDER |
| | ) |
| **WALMART STORES EAST, LP** | ) |
| **WAL-MART STORES, INC.** | ) |
| **RANDY HARGROVE,** | ) |
| | ) |
| Defendants. | ) |

**THIS MATTER** is before the court on defendants' Motion to Dismiss (#8), which has been fully briefed, and was argued on July 15, 2014, by counsel.

I.

In this action, plaintiff contends that defendant Randy Hargrove, in his capacity as national media relations director for the corporate defendants, defamed plaintiff by making statements that were published in *The Nation* on April 5, 2013, just weeks before this court tried plaintiff's previous action, Johnson v. Wal-Mart Stores East, LP, et al., 3:10cv659 (W.D.N.C. 2013) ("Johnson I"). It appears that while the previous action was pending, plaintiff initiated contact with *The Nation*, provided the magazine with a six-hour interview, and told the reporter that Wal-Mart discharged him from employment for unlawful reasons, including racial discrimination. *The Nation* then sought a response from the corporate defendants to such accusation and the following was reported in the article:

> Walmart rejects Johnson's allegations. "We conducted a thorough investigation and have detailed information outlining his misconduct, and, based on the facts, he was terminated for violating company policy," company

1

spokesperson Randy Hargrove told *The Nation*. "Walmart does not condone or tolerate discrimination of any type and that played no role in his dismissal."

"Additionally, we have strict policies around inventory accounting, and the allegations Mr. Johnson have raised are completely false and unsubstantiated," Hargrove added. "In addition to Mr. Johnson, more than a dozen associates in his market were disciplined for failing to report the direction he gave them."

Spencer Woodman, "Former Walmart District Manager Accuses Company of Widespread Inventory Manipulation," *The Nation* (April 5, 2013) (#8-1). Based on the publication of that article, plaintiff brings a number of state-law tort and statutory claims based on alleged defamation.

While plaintiff brought a number of claims in <u>Johnson I</u>, including a novel claim for compelled self-defamation and a claim under the North Carolina Unfair and Deceptive Trade Practice Act ("UDTPA"), that action was ultimately tried on the issue of whether plaintiff was terminated from his employment based on his race in violation of Title VII. After a nearly two week trial, the jury returned a verdict finding that race was not a motivating factor in plaintiff's termination. <u>Id.</u>

Defendants have moved to dismiss the complaint in the entirety under Rules 12(b)(2) and (6), Federal Rules of Civil Procedure. In moving to dismiss, defendants have asserted six grounds for dismissal, with the overriding argument being that this action is barred *in toto* by the doctrine of *res judicata*. As discussed in greater detail below, the court finds this action is barred by res *judicata* and is, therefore, subject to dismissal under Rule 12(b)(6).

II.

In the past, a complaint could not be dismissed under Rule 12(b)(6) unless it appeared certain that plaintiff could prove no set of facts which would support its claim and entitle it to relief. <u>Neitzke v. Williams</u>, 490 U.S. 319 (1989); <u>Conley v. Gibson</u>, 355 U.S. 41 (1957). This

"no set of facts" standard has been abrogated by the Supreme Court in recent decisions. First, in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), the Court held that the "no set of facts" standard first espoused in Conley, supra, only describes the "breadth of opportunity to prove what an adequate complaint claims, not the minimum adequate pleading to govern a complaint's survival." Id. at 563. The Court specifically rejected use of the "no set of facts" standard because such standard would improperly allow a "wholly conclusory statement of claim" to "survive a motion to dismiss whenever the pleadings left open the possibility that a plaintiff might later establish some 'set of [undisclosed] facts' to support recovery." Id. at 561 (alteration in original). Post Twombly, to survive a Rule 12(b)(6) motion to dismiss, a plaintiff must allege facts in his complaint that "raise a right to relief above the speculative level." Id. at 555.

> [A] plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . .

Id. (second alteration in original; citation omitted). Further, a complaint will not survive Rule 12(b)(6) review where it contains "naked assertion[s] devoid of further factual enhancement." Id., at 557. Instead, a plaintiff must now plead sufficient facts to state a claim for relief that is "*plausible* on its face." Id. at 570 (emphasis added).

While the Court was clear in Twombly that Conley was no longer controlling, it again visited the Rule 12(b)(6) pleading standard in Ashcroft v. Iqbal, 556 U.S. 662 (2009). In Iqbal, the Court determined that Rule 8 "demands more than an unadorned, the defendant – unlawfully – harmed - me accusation." Id. at 678. The Court explained that, "to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.'" Id. (citing Twombly, supra; emphasis added). What is plausible is also defined by the Court:

> [a] claim has facial plausibility when the plaintiff pleads sufficient factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

Id. This "plausibility standard" requires "more than a sheer possibility that a defendant has acted unlawfully." Id. Thus, a complaint falls short of the plausibility standard where a plaintiff pleads "facts that are 'merely consistent with' a defendant's liability . . . ." Id. While the court accepts plausible factual allegations made in a complaint as true and considers those facts in the light most favorable to plaintiff in ruling on a motion to dismiss, a court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Eastern Shore Mkt.'s Inc. v. J.D. Assoc.'s, LLP, 213 F. 3d 175, 180 (4th Cir. 2000).

In sum, when ruling on a Rule 12(b)(6) motion, "a judge must accept as true all of the factual allegations contained in the complaint." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (*per curiam*) (citations omitted). A complaint "need only give the defendant fair notice of what the claim is and the grounds upon which it rests." Id. at 93 (alteration and internal quotation marks omitted). However, to survive a motion to dismiss, the complaint must "state[ ] a plausible claim for relief" that "permit[s] the court to infer more than the mere possibility of misconduct" based upon "its judicial experience and common sense." Iqbal, 129 S. Ct. at 1950. While a plaintiff is not required to plead facts that constitute a *prima facie* case in order to survive a motion to dismiss, see Swierkiewicz v. Sorema N.A., 534 U.S. 506, 510-15 (2002), "[f]actual allegations must be enough to raise a right to relief above the speculative level," Bell Atlantic Corp. v. Twombly, 550 U.S. at 555.

III.

The doctrine of *res judicata* provides that once a claim has been litigated and resolved, it may not be reasserted elsewhere. Under res judicata, "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." Pueschel v. United States, 369 F.3d 345, 354 (4th Cir. 2004) (quoting Federated Dep't Stores, Inc. v. Moitie, 452 U.S. 394, 398 (1981) (further citations omitted)). To secure a dismissal under Rule 12(b)(6), defendants must show that three requirements are met for the application of *res judicata*: "(1) a final judgment on the merits in a prior suit; (2) an identity of the cause of action in both the earlier and the later suit; and (3) an identity of parties or their privies in the two suits." Id. at 354–55 (citing Nash Cnty. Bd. of Educ. v. Biltmore Co., 640 F.2d 484, 486 (4th Cir. 1981), cert. denied, 454 U.S. 878 (1981)).

A.

First, the court has considered whether there was a final judgment on the merits in a prior case. In Johnson I, review of the pleadings reveals that there was a final judgment on the merits between these parties or their privies as the jury returned its verdict, this court entered judgment in accordance with that verdict, the judgment was appealed, and the appeal was ultimately dismissed. In re Tomlin, 105 F.3d 933, 936–37 (4th Cir.1997) (holding that "dismissal of an action with prejudice is a complete adjudication of the issues presented by the pleadings and is a bar to a further action between the parties.") (internal quotation marks omitted). The first requirement is met.

B.

Second, the court has considered whether there is an identity between the issues which must be resolved in this action and the issues that were resolved in the previous action. This

court is not controlled in such determination by how plaintiff frames those issues, but instead looks to the issues necessary to decide the claims that have been made. Walls v. Wells Fargo Bank, N.A., 557 Fed.Appx. 231, 233 (4th Cir. Feb. 26, 2014)( finding that "[t]hough the legal theories on which the claims here are based are not exactly the same …, the underlying grounds for all of the claims in both lawsuits are Wells Fargo's allegedly excessive and fraudulent charges."). The process of "finding identity in causes of action turns on whether the suits and the claims asserted therein arise out of the same transaction or series of transactions or the same core of operative facts." Id. (internal quotation marks and citation omitted).

While plaintiff contends that the present claims arise not out his termination, but from the comments made by the corporate spokesman four years after his termination, the court finds that this it was the circumstances of plaintiff's termination that form the same "core of operative facts" in both actions. Indeed, plaintiff's contention in this action, to wit, that Defendant Hargrove statement to *The Nation* that plaintiff's employment was "terminated for violating company policy" was false as the real reason he was terminated was for disclosing unlawful inventory practices, was essentially alleged in the Complaint in Johnson I:

> 9. For several years, defendant has engaged in a concerted and covert effort to manipulate its inventory by hiding or failing to capture true losses. Upon information and belief, such manipulation of inventory is a violation of the state and federal securities laws with which defendant must comply as a public company. Mr. Johnson opposed defendant's efforts to perpetrate these unlawful acts. As a consequence of his opposition, Mr. Johnson ultimately was terminated.
> ***
>
> 11. Defendant's proffered explanation for terminating Mr. Johnson is nothing more than a pretext for defendant's real reason for termination: discrimination on the basis of Mr. Johnson's race, and retaliation for his opposition to defendant's illegal activity. In fact, prior to his termination, Mr. Johnson had never been reprimanded or disciplined or warned in any manner for any performance deficiency.

6

Johnson I, Complaint (#1-1) at ¶¶ 9 & 11. These allegations are substantially identical to the contention raised in this action, which is the statement as to the reason for plaintiff's termination is false. Thus, the second requirement is met.

C.

Third, and finally, the court has considered whether there is an identity of parties or their privies in the two suits. The corporate defendants are essentially the same with along Defendant Hargrove being a newcomer to this action. Review of the Complaint in this action reveals, however, that the actions taken by Defendant Hargrove were in his capacity as the corporate defendants' director of national media relations and were clearly within the course and scope of that employment. Privity extends to "a person so identified in interest with a party to former litigation that he represents precisely the same legal right in respect to the subject matter involved." Nash Cnty. Bd. of Educ., supra. Thus, as an employee of the corporate defendants, Defendant Hargrove stands in privity with his employer. Drag v. Southtrust Bank, 2005 WL 1883241 (W.D.N.C. August 4, 2005). Thus, there is privity between Defendant Hargrove and the corporate defendants.

D.

While outside the three-factor inquiry provided in Pueschel, plaintiff contends that it would be inequitable to apply *res judicata* in bar of these claims because he did not have a fair opportunity to raise such claims as they arose only two weeks before the trial in Johnson I. That argument is, however, well outside the *res judicata* inquiry as entry of judgment in a previous case gives rise to application of *res judicata* to all claims that existed at that time, even if the plaintiff was not then aware of those claims. Aliff v. Joy Mfg. Co., 914 F.2d 39, 42 (4th Cir. 1990); Harnett v. Billman, 800 F.2d 1308, 1314 (4th Cir. 1986).

Even if a "fair opportunity to raise the claims" was an appropriate consideration, plaintiff did have a fair opportunity to litigate these claims in the prior action, one provided in the Federal Rules of Civil Procedure. Review of the pleadings in Johnson I reveals that after April 5, 2013, plaintiff never moved this court to amend his Complaint to assert such newly discovered claims. Rule 15 specifically provides for amendment even after the trial has commenced. Fed.R.Civ.P. 15(b)(1). Further, Rule 15(d) specifically provides a method for a party to file a supplemental pleading "setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Fed.R.Civ.P. 15(d). While plaintiff argues that the trial was peremptorily set for April 22, 2013, leaving little time to prepare those claims for trial, it would have been well within this court's discretion to continue the trial if it allowed the Rule 15 motion. Thus, it is not accurate to argue that plaintiff did not have a fair opportunity to raise these claims in the prior action, rather, it is accurate to argue that plaintiff failed to take advantage of that opportunity.

IV.

In sum, all three elements of res judicata are met here. Even if this court were to consider the "fair opportunity to raise the claim" as an appropriate fourth element, it appears that plaintiff was afforded such opportunity under Rule 15. Ultimately, plaintiff's attempt to restyle and relitigate his challenge to his termination is not sufficient to overcome the bar of res judicata. This action will, therefore, be dismissed with prejudice based on the doctrine of *res judicata*.[1]

**ORDER**

---

[1] Plaintiff's UDTPA claim is also subject to dismissal as it arose out of the employment relationship, which is the same reason his UDTPA claim was dismissed in Johnson I. This claim also arises out of the employment relationship as the only relationship between these entities was that or employer/employee. *Webb v. Harris*, 378 F. Supp. 2d 608, 612 (M.D.N.C. 2005) (finding that defamation claim related to employee's performance arose out of employment relationship).

**IT IS, THEREFORE, ORDERED** that defendants' Motion to Dismiss (#8) is **GRANTED**, and this action is dismissed with prejudice as barred by the doctrine of *res judicata*.

Signed: July 18, 2014

Max O. Cogburn Jr.
United States District Judge